144

CONSUMERS ICE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12704.   Promulgated March 22, 1928.

*Jacob S. Seidman, Esq.,* and *Frank E. Seidman, C. P. A.,* for the petitioner.

*John F. Greaney, Esq.,* for the respondent.

145

OPINION.

SIEFKIN: The principal question at issue is at what amount the riparian rights acquired by the petitioner in and after 1894 may be included in invested capital. The evidence is clear that the amount of $5,775 paid in cash for various properties between 1894 and 1910 should be included, and to the extent that the respondent excluded that amount he is in error. The evidence as to the value of the riparian rights paid in to the corporation for stock, however, in our opinion, falls far short of proving "actual cash value" called for in section 326 (a) (4) of the Revenue Acts of 1918 and 1921.

The petitioner contends that it is entitled to have its excess-profits tax computed as directed by section 328 of the Revenue Acts of 1918 and 1921, respectively, because its invested capital can not be satisfactorily ascertained, and because of the abnormal conditions affecting its invested capital.

Before the six ice companies consolidated and formed the petitioner, a representative from each of the companies met and appointed a committee of three to make an appraisal of the values of the riparian rights, sheds and other buildings. The balance of the property of the various companies was appraised by independent appraisers. Two of the members of the riparian rights appraisal committee were Hiram Collins and Frank Bonnell. A witness did not know who the third was. Collins and Bonnell are now dead. The petitioner acquired the riparian rights for $34,200 of its capital stock,

but no evidence was introduced as to the value of the riparian rights as of the time the petitioner acquired them nor of the value of the stock issued therefor. Mere failure on the part of the petitioner to introduce evidence as to the amount of stock issued for intangibles, the value of such stock, and the value of the intangibles at the time of acquisition does not warrant our finding for special assessment.

The petitioner advances the further ground for special assessment that abnormal conditions affected its capital and worked upon it an exceptional hardship.

The evidence discloses that subsequent to organization the petitioner constructed ice houses, sheds and other additions and betterments to its plant, and such was accomplished by company labor. Prior to 1913 this labor was charged to expense. The salary of the manager, who superintended such work, was never charged to the building account.

The petitioner contends that since these amounts can not be now ascertained, thereby precluding their restoration to invested capital, the petitioner is entitled to relief by special assessment.

No evidence whatsoever as to the salary of the manager or the other amounts expended was introduced, and while we have previously allowed special assessment where like items were charged to expense in unknown amounts, yet this alone was not the sole ground.

We are of the opinion that insufficient evidence has been introduced to warrant special assessment.

The petitioner maintains that the assessment and collection of the proposed deficiencies for the fiscal years 1920 and 1921 are now barred by the statute of limitations. The returns were filed on February 3, 1921, and February 3, 1922, and the deficiency letter was dated February 11, 1926. The petitioner states that since the "waivers" introduced by the respondent, which extended the time for assessment to December 31, 1926, were not shown to have been signed by the respondent and the date of signing was not shown, they do not constitute valid consents to later assessments of the tax. This contention of the petitioner is not well taken. See *Perkins Land & Lumber Co.*, 9 B. T. A. 528; *Trustees of Ohio & Big Sandy Coal Co.*, 9 B. T. A. 617; *Greylock Mills*, 9 B. T. A. 1281.

However, petitioner states that since the instrument executed with regard to taxes for 1920 refers simply to the year 1920, and as it does not designate a "taxable year" or a "fiscal year," it refers only to the calendar year 1920, and that consequently no waiver covers the period December 1, 1919, to December 31, 1919.

The primary consideration with regard to waivers is the intent of the parties. It is only reasonable to suppose that when the agreement was entered into the parties intended it to cover the

taxable year, and since no showing is made to the contrary, we hold that the waiver in question covered the entire taxable year and assessment of the taxes is not barred.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*