ANTONIO MÁRQUEZ ARBONA, Plaintiff and Appellee, v. SECRETARY OF THE TREASURY, Defendant and Appellant.

No. 139.   Decided February 26, 1962.

*Francisco Espinosa, Jr., Acting Secretary of Justice, Arturo Estrella* and *Luis F. Candal, Assistant Secretaries of Justice,* for appellant.   *F. M. Susoni* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The judge of the trial court concluded that certain deficiencies notified to Antonio Márquez-Arbona were barred. The Secretary of the Treasury comes to us for review.

The taxpayer, in determining his taxable income, utilized a twelve-month period beginning July 1 and ending June 30 of the following fiscal year. This notwithstanding, he filed his returns within the period given taxpayers to file their returns on the basis of calendar years. And in the heading of the return he set forth that it corresponded to the taxable year ending December 31. But, indeed, no income received after June 30 was included in the return.

The taxpayer signed various documents entitled "Consent to Waive the Term of Prescription and to Fix Time for Income Tax Assessment" for the years 1943, 1945, and 1946. They included the following paragraph—identical in every case, except insofar as the date is concerned:

"That pursuant to the provisions of the Income Tax Act in force, the taxpayer herein, in his own right or by his representative, hereby waives for all legal purposes the seven (7)-year period of limitation provided by § 60(a) (1) of the Act, with respect to his income-tax return for the taxable year ending December 31, 1945; it being agreed that any income-tax deficiency determined under the act in force or under prior laws, in connection with the aforesaid income-tax return, may be assessed on any date on or before December 31, 1953."

The deficiencies that gave rise to this litigation were notified on August 17, 1954. We have seen that they correspond to the years 1943, 1945, and 1946. Thus, their effectiveness depends on the construction of the waiver embodied in the document executed by the taxpayer, for otherwise they would be barred. Income Tax Act of 1924, § 60,

13 L.P.R.A. § 778. The taxpayer alleges that said waivers are ineffective since they refer to years ending December 31 and the deficiency notified was determined on the basis of fiscal years ending June 30. He is wrong.

In *Worumbo Manufacturing Co.*, 13 B.T.A. 883 (1928), the waiver executed by the taxpayer referred to the year 1919 and he was notified with a deficiency corresponding to the fiscal year ending November 30, 1919. In deciding the issue it was held:

"The petitioner contends that the waiver set out in the findings of fact is not an effective waiver for the reason that it is 'for the year 1919' and not for the fiscal year ended November 30, 1919. We fail to see any merit in this contention. The term 'taxable year' is defined in all of the Revenue Acts beginning with the Revenue Act of 1918 as meaning 'the calendar year, or the fiscal year ending during such calendar year.' The term 'year 1919' as used by the parties to the waiver could have referred to no other year than the taxable year 1919 which in this case was the fiscal year ended November 30, 1919. In our opinion the waiver was valid and since it had not expired at the time the deficiency letter was mailed the proposed deficiency is not barred by the statute of limitations."

See § 276(b) of the Income Tax Act of 1954.

In *Consumers Ice Co.*, 11 B.T.A. 144 (1928), the waiver referred to the year 1920, while the taxpayer had filed his return in which he established a twelve-month period ending November 30, 1920, to determine his income. In deciding the issue it was held:

"However, petitioner states that since the instrument executed with regard to taxes for 1920 refers simply to the year 1920, and as it does not designate a 'taxable year' or a 'fiscal year,' it refers only to the calendar year 1920, and that consequently no waiver covers the period December 1, 1919, to December 31, 1919.

"The primary consideration with regard to waivers is the intent of the parties. It is only reasonable to suppose that when the agreement was entered into the parties intended it

to cover the taxable year, and since no showing is made to the contrary, we hold that the waiver in question covered the entire taxable year and assessment of the taxes is not barred."

In considering this question Mertens summarizes it thus, and supports his conclusion on the case of Worumbo, above cited:

"... it has been held that a waiver of the assessment and collection of taxes due under a return made for a specific calendar year applies to that calendar year or, if the taxpayer is on the fiscal year basis, to the fiscal year ending in the calendar year named in the waiver." 10 Mertens, § 57.56, p. 236.

To the same effect, *Lowell Cotton Mills* v. *Grissom*, 59 F.2d 461 (D.C. M.D. N.C., 1932); *Constitution Publishing Co.*, 22 B.T.A. 426 (1931); *Raymond R. Bill & Co.*, 15 B.T.A. 320 (1929).

In *Spencer K. Mulford, Sr.*, 25 B.T.A. 238 (1932), the taxpayer signed a waiver without specifying the year to which the waiver corresponded. When he was notified with the deficiency, he raised this question to support his claim that it was barred. It was decided against his contention, since the only year in controversy was the year in connection with which the deficiency was notified, and in deciding the issue raised it was said:

"Where the taxpayer, by the execution of the waiver, has obtained delay in the collection of additional taxes and a more deliberate and thorough consideration of his claim in abatement, and where the waiver is regular in form ... and is in the possession of the proper governmental bureau, every presumption should be taken in favor of its validity and binding effect."

The trial judge to whom the question was submitted for the first time, in deciding it used terms which adequately dispose of the issue:

"... At first blush, plaintiff's contention seems sound, because if a taxpayer executes a waiver of prescription on the

basis of a calendar year covering income from January 1 to December 31, and thereafter the Secretary of the Treasury serves plaintiff with a deficiency involving a fiscal year, the deficiency would undoubtedly be based on income partly covering periods beyond the period of income in connection with which prescription was waived. Following plaintiff's argument, he would have authorized the assessment of the tax on income obtained between January 1 and December 31, and the Secretary of the Treasury would be assessing a tax on income partly obtained on a date prior to that January 1.

"But as we examine the evidence, plaintiff's contention vanishes, and everything boils down to a mere question of nomenclature. The evidence showed that the deficiency determined for each year was based on the same period of income included in the return, in accordance with the taxpayer's accounting. Thus, for example, we see that in the year 1943, the first one of the years involved, the deficiency does not cover income obtained between July 1 and December 31 of that year not included in the return. Nor does the deficiency discard the income declared between July 1 and December 31, 1942, which period falls beyond the 1943 calendar year. The same thing happens with the other years. Hence, the situation which at first blush seems sound, to the effect that on the basis of a waiver of prescription for a taxable period, the Secretary of the Treasury assessed deficiencies including different taxable periods, does not exist.

"The answer as to why the waivers of prescription executed by defendant make reference to years ending December 31, appears from the taxpayer's own actions. Notwithstanding that he had to pay taxes on the basis of a period of income ending June 30, the taxpayer filed his returns as of December 31, although those returns included no operations or income obtained during the six months immediately preceding December 31. In the waivers of prescription the Secretary of the Treasury could not make reference to years ending June 30, because there was no such thing, according to the returns. The important fact is that when the waivers referred to years ending December 31, the taxpayer knew perfectly for which periods of income he was waiving prescription, because it corresponded faithfully to his own method of tax paying and return filing. Thus, when

he authorized the defendant to assess on or before December 31, 1954, any income-tax deficiency·'in connection with the aforesaid income-tax return' [December 31, 1943]; [1945], and [1946] he knew in connection with this income-tax return and regarding which period of income he was authorizing the assessment... He can not allege that he was misled or deceived by a situation of his own creation."

The waiver executed by the taxpayer can be construed in no other way. If in the returns filed by him he established as the basis to determine his income a twelve-month period ending June 30, when he signed the waiver he could not refer to any period of the year other than the one the taxpayer himself established in his return. Were we to uphold the taxpayer's contention, we would simply be recognizing the fruits of his own error.

█ It now remains to be considered the question concerning the penalties imposed by the Treasurer for the failure to make the return within the period granted therefor, beginning at the end of the fiscal year utilized by the taxpayer to determine his income. Act No. 74 of 1924, § 27—13 L.P.R.A. § 706. Pursuant to the provisions of the aforesaid section, the taxpayer was bound to file his return not later than September 15 and he did not file it until the following March 15. Therefore the imposition of the penalties prescribed by law is in order. Act No. 74 of 1924, § § 59 and 70 (13 L.P.R.A. § § 777(a) and 811(b)).[1]

In view of the conclusion we have reached, we need not consider and pass upon the other error assigned by appellant.

Therefore, the judgment rendered by the Superior Court, San Juan Part, on January 19, 1959, shall be reversed and the case shall be remanded for further proceedings.

---

[1] A similar provision appears in § 291 of the 1954 Income Tax Act. 13 L.P.R.A. § 3291 (1957 Cum. Supp.).